# MORROW COUNTY COURT OF COMMON PLEAS
## KIMBERLY L. BOOD, CLERK OF COURT
48 EAST HIGH STREET
MT. GILEAD, OH 43338
PHONE (419) 947-2085 FAX (419) 947-5421

# SUMMONS

**Case Number: 2022 CV 00134**

**Plaintiff(s):**                                    VS          **Defendant(s):**
BRIAN BARKLEY                                                    NATIONWIDE AGRIBUSINESS INSURANCE
2923 COUNTY ROAD 146                                            COMPANY
WALDO OH 43356                                                  C/O CORPORATION SERVICE COMPANY, S/A
                                                                3366 RIVERSIDE DRIVE, SUITE 103
ERIN BARKLEY                                                    UPPER ARLINGTON OH 43221
2923 COUNTY ROAD 146
WALDO OH 43356

ROBERT BARKLEY
2389 COUNTY ROAD 146
ASHLEY OH 43003

DONNA BARKLEY
2389 COUNTY ROAD 146
ASHLEY OH 43003

BARKLEY ENTERPRISES, INC
2923 COUNTY ROAD 146
WALDO OH 43356

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

You are required to serve upon the plaintiff(s) attorney, or upon the plaintiff(s) if he/she/they have/has no attorney of record, a copy of your answer to the complaint within twenty-eight (28) days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three (3) days after service on plaintiff(s) attorney.

The names and addresses of the plaintiff(s) attorneys are as follows:
MATTHEW S BROWN
CARLILE, PATCHEN & MURPHY, LLP
950 GOODALE BLVD, STE 200
COLUMBUS OH 43212

ANGELA M FOX
FIRESTONE, BREHM, WOLF & WHITNEY LLP
15 W WINTER ST
DELAWARE OH 43015

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.
Date: November 21, 2022

KIMBERLY L. BOOD, CLERK

*M Meadows*

M MEADOWS, DEPUTY CLERK

**Exhibit A**

IN THE COURT OF COMMON PLEAS FOR MORROW COUNTY, OHIO
CIVIL DIVISION

BRIAN BARKLEY
2923 County Road 146
Waldo, Ohio 43356-9122

and

ERIN BARKLEY
2923 County Road 146
Waldo, Ohio 43356-9122

And

ROBERT BARKLEY
2389 County Road 146
Ashley, Ohio 43003

and

DONNA BARKLEY
2389 County Road 146
Ashley, Ohio 43003

and

BARKLEY ENTERPRISES, INC.
2923 Count Road 146
Waldo, Ohio 43356-9122

                    *Plaintiffs*,

            v.

NATIONWIDE AGRIBUSINESS INSURANCE
COMPANY
c/o Corporation Service Company, S/A
3366 Riverside Drive, Suite 103
Upper Arlington, Ohio 43221

                    *Defendant*.

CASE NO.: 2022CV00134

JUDGE ELKin



1

PLAINTFFS BRIAN BARKLEY, ERIN BARKLEY, ROBERT BARKLEY, DONNA
BARKLEY, AND BARKLEY ENTERPRISES, INC.'S COMPLAINT FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND BAD FAITH

(JURY DEMAND ENDORSED HEREON)

**NOW COME** Plaintiffs Brian Barkley, Erin Barkley, Robert Barkley, Donna Barkley and

Barkley Enterprises, Inc. (collectively "the Plaintiffs" or "Insureds"), by and through undersigned

counsel, and for their Complaint against the Defendant Nationwide Agribusiness Insurance

Company state as follows for breach of contract, bad faith, and declaratory judgment following

the destruction of a barn located on one of their properties along with other items in that barn:

### JURISDICTION AND VENUE

1.      Plaintiffs Brian Barkley and Erin Barkley are individuals, residing at 2923 County

Road 146, Waldo, Ohio 43356 in Morrow County, Ohio. Plaintiff Barkley Enterprises, Inc. is

located at the same address.

2.      Plaintiffs Robert Barkley and Donna Barkley are individuals residing at 2389

County Road 146, Ashley, Ohio 43003 in Morrow County.

3.      Defendant Nationwide Agribusiness Insurance Company ("NAIC") is an Iowa

domiciled property casualty insurance company with corporate offices located at 1 West

Nationwide Blvd, Columbus, Ohio, 43215.

4.      NAIC issued an Agribusiness Insurance Policy, bearing policy number FPKN

FMPN 66-5-5193717, (the "Policy") to the Plaintiffs that was effective September 21, 2020, for

sixteen (16) properties including the property located at 2862 County Road 146, Waldo, Ohio

4335-9122 in Morrow County, Ohio (the "Subject Property"). The Policy in effect at the time of

2

the loss is not attached as because Defendant is in possession of same and the copy available to Plaintiffs is in excess of 400 pages.

5.     Jurisdiction and venue are proper in this forum pursuant to both Rule 3(B)(3) and 3(B)(6) of the Ohio Rules of Civil Procedure. Defendant conducted activity, and the claim for relief arose, in Marion County.

## STATEMENT OF FACTS

6.     The Plaintiffs incorporate and restate the above paragraphs as if fully rewritten herein.

7.     A loss by fire (the "Fire") occurred around at 4:30 A.M., on December 29, 2020, at a barn ("the Barn") located on the Subject Property.

8.     The Barn, garage, personal property, and cattle were insured by NAIC pursuant to the Policy issued by NAIC.

9.     The Policy includes coverage for "Dwellings," "Other Private Structures Appurtenant to Dwellings," "Household Personal Property," "Loss of Use," "Additional Living Expenses," "Fair Rental Value," "Scheduled Farm Personal Property," "Limited Unscheduled Farm Personal Property," and "Farm Buildings and Structures."

10.     The Policy provides insurance coverage for 125 Head of Cattle with a stated amount of $4,000 per Head.

11.     The Plaintiffs made all premium payments required by the Policy.

12.     As a result of the Fire, the Barn, all personal property within the Barn, and 56 Head of cattle have been destroyed.

13.     Immediately after the Fire, NAIC was promptly notified of same. Upon NAIC's demand, the Plaintiffs provided a Sworn Statement in Proof of Loss reflecting a loss of at least

3

$496,450.00. NAIC was provided with a detailed, itemized and line-by-line, report of the personal property loss suffered by the Plaintiffs, including 56 bred heifers that were housed in the Barn that were each insured for a stated amount of $4,000.00.

14.     NAIC had adjusters and/or investigators at the Subject Property on or about January 4, 2021 to investigate the claim. NAIC's adjusters or investigators never returned to the property after that date. Nor did NAIC ever request to return to the Subject Property after January 4, 2021.

15.     NAIC never engaged in any effort to dig through the destroyed Barn to investigate the loss or identify any property or cattle destroyed in the Fire.

16.     NAIC refused to engage in any effort to determine the extent or amount of the damage and loss at the Subject Property.

17.     After many months of NAIC doing nothing at the Subject Property, NAIC informed Mr. Barkley that he could clean up the destroyed Barn. The Barn was covered and the cost to clean up the debris from the fire is covered. NAIC never offered to clean up the property, pay for the cleanup of the property, or pay for the replacement of the property. NAIC left its Insureds stranded.

18.     When Mr. Barkley began to clean up the property, they kept whatever bones from the destroyed cattle they could find in a bin. Photos of the bin of bones was provided to NAIC. Instead of requesting to inspect or retrieve the bin of bones, NAIC demanded that Mr. Barkley keep the bones locked in his house with his family.

19.     Mr. Barkley complied with the unreasonable demand from NAIC and kept the bin of bones for months, which his children would see every day. As if the trauma of the Fire was not enough for Mr. Barkley's family, NAIC demanded that his children see the destroyed carcasses of their cattle for months on end.

4

20.     The sadistic nature by which NAIC sought to traumatize Mr. Barkley and his family is without any rational basis whatsoever.

21.     In March 2021, NAIC demanded that Plaintiff Brian Barkley produce voluminous documents including (1) federal and state income tax returns, (2) all documents, photographs, videotapes or things of any sort that prove that 56 bred heifers were destroyed in the fire as set forth in Plaintiffs' Sworn Statement In Proof of Loss, (3) all documents of any sort that pertain to the 56 bred heifers, (4) all documentation pertaining to the purchase of the 56 bred heifers, (5) all documentation pertaining to the purchase of feed for the 56 bred heifers, (6) all documentation pertaining to the purchase of the veterinary care for the 56 bred heifers, (7) all documentation pertaining to the purchase of breeding for the 56 bred heifers, (8) all documentation pertaining to the purchase of the prospective sale of the 56 bred heifers, and the (9) contact information of all individuals who could corroborate the claim that the 56 bred heifers were destroyed in the subject property.

22.     Most of the documents and information NAIC demanded were not required to be provided to NAIC . Nevertheless, the Plaintiffs complied with NAIC's demands.

23.     Along with requesting the documents, NAIC demanded that Plaintiff Brian Barkley submit to an examination under oath ("EUO"). NAIC's demand for an EUO was not based on any good faith investigation into the Plaintiffs' claim; rather, it was intended to intimidate the Plaintiffs' and delay the ultimate resolution of the claim.

24.     Mr. Barkley complied and answered NAIC's questions at the EUO, which was taken remotely via Zoom on May 26, 2021 lasting over two (2) hours and being recessed at the request of NAIC's attorney.

25. On June 4, 2021, Plaintiffs withdrew their claim against NAIC in response to the intimidation by NAIC and threats of criminal action.

26. In April 2022, Plaintiffs, through counsel, determined they would not succumb to the unwarranted intimidation and threats from NAIC and its counsel and re-opened the claim.

27. NAIC re-opened the claim, but for the first time issued a reservation of rights, without providing any specification of what claims were not covered. There was no coverage dispute raised by NAIC as it limited its response to simply setting forth the alleged duties of the insured.

28. NAIC never identified any damaged property that is not covered by the policy for damage sustained in the Fire. Nevertheless, NAIC refuses to indemnify its insured for the destroyed property without any justification whatsoever.

29. In August 2022 NAIC, through counsel, demanded a second EUO of Mr. Barkley on September 9, 2022, at either the Delaware County Courthouse or the Delaware County Law Library.

30. NAIC, through counsel, has never identified what information it was unable to obtain about the fire or the destroyed property and cattle from the voluminous records produced by the insureds and the first EUO.

31. The demand for a second EUO was not reasonable and was a mere pretense to engage in further intimidation and harassment of the insured.

32. NAIC, through counsel, later alleged that it was unable to secure a room at the Delaware County Courthouse to hold the EUO.

33. NAIC, through counsel, then unilaterally decided that the EUO would take place at the Franklin County Courthouse in Columbus, Ohio.

6

34.     NAIC, through counsel, demanded that it would only continue the EUO at the courthouse. In short, NAIC, through counsel, demanded that Mr. Barkley, a local farmer, be processed through security screening in a courthouse before being subjected to hours of intimidation and harassment at the hands of NAIC's counsel.

35.     Plaintiffs' counsel advised that Plaintiffs would agree to another EUO notwithstanding the fact that there was nothing more to be learned about the claim. However, because the insured was from Morrow County and the loss was located in Morrow County the EUO could occur at Plaintiff counsel's office or via Zoom.

36.     NAIC, through counsel, recommended Zoom for the first EUO but would not agree to a Zoom for the second EUO. When it became apparent that NAIC could intimidate and harass its Insured into withdrawing the claim it was emboldened and sought to place extreme requirements on the second EUO in an effort to convince its insured to simply go away yet again.

37.     Despite the suggestions by Plaintiffs' counsel as to how the dispute over the location of Mr. Barkley's EUO could be resolved, Nationwide's counsel refused to change the location of the EUO and threatened that he would consider Mr. Barkley's non-appearance as a failure to cooperate with the investigation into the Fire.

38.     On September 28, 2022, Nationwide issued a denial of Plaintiffs' claim on the grounds that Plaintiffs failed to cooperate in the investigation of the Fire, not complying with the conditions under the Policy, and failure to take reasonable steps to protect the covered property from further damage (the "Denial Letter").

39.     The Denial Letter, attached as Exhibit A, has no contact information at all for NAIC. There is no phone number or fax number on the Denial Letter. There is no claim representative noted on the Denial Letter. There is no signature from anyone at NAIC on the Denial

7

Letter. It is in every regard nothing more than a form letter NAIC uses to deny its insured hundreds

of thousands of dollars of insurance coverage for which the insured has paid premiums for years.

40.     To complete the sadistic trauma NAIC perpetuated upon the Barkley family, one

of the bases for the denial of coverage was that the insured did not keep the bin of bones on their

property for as long as NAIC demanded.

<h3 align="center">COUNT ONE: BREACH OF CONTRACT</h3>

41.     The Plaintiffs incorporate and restate the above paragraphs as if fully rewritten

herein.

42.     The Plaintiffs purchased a policy of insurance whereby NAIC promised to insure

the Barn, personal property, and cattle against loss caused by fire

43.     The Plaintiffs fulfilled their obligations under the contract by paying the Policy's

premiums and satisfying all conditions necessary for coverage and to file this lawsuit against

NAIC.

44.     The losses suffered by the Plaintiffs are covered losses. There are no exclusions

that apply that would deny them coverage for their loss. NAIC has not identified a single exclusion

applicable to the insured's claim.

45.     NAIC breached the contract by breaking their promise to the Plaintiffs. NAIC

refuses to provide coverage for losses caused by the December 29, 2020 Fire.

46.     As a direct, foreseeable, and proximate result of NAIC's breach of contract, the

Plaintiffs have suffered damages in excess of $25,000. This amount does not include further

amounts to be proven at trial.

8

## COUNT TWO: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

47. Plaintiffs hereby incorporate and restate the above paragraphs as if fully rewritten herein.

48. At all times relevant to the Complaint Plaintiffs and NAIC were parties to an enforceable insurance contract.

49. Every contract or agreement includes a covenant of good faith and fair dealing.

50. Each party to a contract is prohibited from unfairly interfering with the right of the other party to receive the benefits of the agreement.

51. Plaintiffs performed all its obligations under the agreement.

52. NAIC has unfairly interfered with Plaintiffs' rights to receive benefits under the agreement, thereby breaching the implied Covenant of Good Faith and Fair Dealing.

53. NAIC intentionally, knowingly, and willfully violated its duty of good faith.

54. NAIC's conduct has financially harmed Plaintiffs.

55. NAIC's actions were intentional, willful, wanton, malicious and/or reckless, and in total disregard for the Plaintiffs' rights such that punitive damages should be awarded.

56. Due to NAIC's breach of Covenant of Good Faith and Fair Dealing, Plaintiffs have been damaged in an amount in excess of $25,000 with the exact amount to be proven at trial.

### COUNT THREE: DECLARATORY JUDGMENT

57. The Plaintiffs incorporate and restate the above paragraphs as if fully rewritten herein.

58. The Plaintiffs purchased a policy of insurance from NAIC, through the Douce Agency, LLC, that insured the Barn, personal property, and cattle against losses caused by a fire.

59. The Fire destroyed the Barn, personal property, and cattle .

9

60. NAIC has not denied coverage for the loss caused by the Fire notwithstanding Plaintiffs' above and beyond cooperation with demands for documentation and information outside of the scope of the Policy.

61. In failing to provide coverage for the Fire that destroyed the Plaintiffs' Barn, personal property, and cattle NAIC has failed to uphold the terms of the Policy it entered with the Plaintiffs.

62. Accordingly, the Plaintiffs are entitled to declaratory judgment establishing that the Barn, personal property, and cattle is covered pursuant to the terms of the Policy and that certain additional coverages are applicable to the claim as well and that no exclusions apply that would deny the Plaintiffs coverage under the policy.

## COUNT FOUR: BAD FAITH

63. The Plaintiffs incorporate and restate the above paragraphs as if fully rewritten herein.

64. NAIC has an obligation to exercise good faith in processing claims of its insured.

65. NAIC has not set forth one coverage provision that denies Plaintiffs' coverage for the losses the Plaintiffs sustained in the Fire.

66. NAIC and its counsel processed this claim with the end goal of withdrawal of the claim or denial without any reasonable justification for such actions.

67. Notwithstanding the photographs of the burned bones and bin of bones NAIC demanded its insured keep for their kids to see every day, NAIC, through counsel, stated that it did not believe any cattle were in the Barn at the time of the Fire.

10

68.     NAIC refused to inspect the property to identify the bones themselves and refused to take custody of the bin of bones at any time. Instead, NAIC declared that the obviously destroyed cattle did not exist despite all evidence to the contrary.

69.     NAIC, through counsel, placed unreasonable requirements upon the insured knowing such requirements were onerous and not mandated by the Policy. For example, NAIC demanded the insured be processed through screening at a courthouse for an EUO when same could have been just as easily accomplished via Zoom (as NAIC's counsel readily admitted months prior) or at Plaintiffs' counsel's office.

70.     NAIC placed burdens on its insured with the purpose and intent to harass and intimidate the insured so that it would withdraw the claim or otherwise provide NAIC with a bogus reason for denying coverage.

71.     NAIC did not have reasonable justification to deny Plaintiffs' claim as submitted to NAIC for payment.

72.     Due to NAIC's bad faith, the Plaintiffs have been damaged in an amount in excess of $25,000 with the exact amount to be proven at trial.

## COUNT FIVE: PUNITIVE DAMAGES

73. The Plaintiffs hereby incorporate and restate the above paragraphs as if fully rewritten herein.

74. NAIC's actions as outlined within this Complaint were willful, wanton, and malicious and were undertaken in bad faith in conscious and/or flagrant disregard for the substantial rights of Plaintiffs such that an award of punitive damages is warranted in both law and fact.

**WHEREFORE,** the Plaintiffs demand judgment against Nationwide Agribusiness Insurance Company for the following relief:

11

A.      Regarding Count One: judgment in favor of the Plaintiffs and against NAIC for compensatory damages in excess of $25,000, plus interest at the statutory rate of interest, with the exact amount to be determined at trial;

B.      Regarding Count Two: judgment in favor of the Plaintiffs and against NAIC for compensatory damages in excess of $25,000, plus interest at the statutory rate of interest, with the exact amount to be determined at trial;

C.      Regarding Count Three: declaratory judgment in favor of the Plaintiffs and against NAIC as described herein;

D.      Regarding Count Four: judgment in favor of the Plaintiffs and against NAIC for compensatory damages in excess $25,000, plus interest at the statutory rate of interest, with the exact amount to be determined at trial.

E.      Regarding Count Five: judgment in favor of Plaintiffs and against NAIC and punitive damages for NAIC's willful, wanton, malicious, and intentional conduct:

F.      Such other legal and equitable relief to which the Plaintiffs may be entitled in law or in equity, including, but not limited to, costs of the action and attorney's' fees in an amount to be determined.

Respectfully submitted,


CARLILE PATCHEN & MURPHY LLP

By: _Matt S G_

Matthew S. Brown (0077687)
950 Goodale Boulevard, Suite 200
Columbus, Ohio 43212
Tele:   (614) 228-6135
Fax:    (614) 221-0216
Email:  mbrown@cpmlaw.com
*Counsel for Plaintiffs*


FIRESTONE, BREHM, WOLF & WHITNEY LLP

By: _Angela M. Fox / Matt S G with authority_

Angela M. Fox (0059355)
15 W. Winter St.
Delaware, OH 43015
Phone:(740) 363-1213
Fax (740) 369-0875
afox@fbwwlaw.com
*Counsel for Plaintiffs*

12

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues presented herein.

Matthew S. Brown (0077687)

 **Nationwide®**

**BRIAN BARKLEY**
Page 1 of 3

| | |
|---|---|
| Date prepared | September 28, 2022 |
| Claim number | 414747-GL |
| Policy number | FPKNFMPN6655193717 |
| Questions? | Contact Claims Associate |

Phone
Fax

BRIAN BARKLEY
2923 COUNTY ROAD 146
WALDO, OH 43356-9122

## Claim details

| | |
|---|---|
| Insurer: | Nationwide Agribusiness Ins Naic |
| Policyholder: | BRIAN BARKLEY |
| Claim number: | 414747-GL |
| Loss date: | December 29, 2020 |

Dear Mr. Barkley,

We completed our review of this property loss reported to have occurred on December 29, 2020. We made every effort to provide a fair and thorough evaluation of your policy of insurance and investigation of your loss.

Based on our investigation and review of your policy contract, Nationwide Agribusiness Ins Naic's opinion is this loss was caused by fire. We must respectfully advise you that your policy number FPKNFMPN6655193717 does not provide coverage for this loss. This decision was also based upon your examination under oath testimony, the facts gathered through our investigation, and all of the other surrounding circumstances. A more detailed explanation for our decision to deny your claim follows below.

## About our decision

This claim was filed on December 29, 2020 for a fire loss at 2862 County Rd 2862 in Waldo Ohio. Adjuster Chrissy Hojnacki, her manager, and origin and cause expert Jeff Spaulding met with you on January 4, 2021 to inspect the loss location. Later you were asked to participate in an examination under oath on May 26, 2021 and after approximately two hours you requested a recess. On June 4, 2021 Nationwide was informed that you would like to withdraw this claim so it was closed at that time. Nationwide was then contacted by Angel Fox Esq. on or about April 4, 2022 who requested we reopen the claim. Nationwide then requested you complete the EUO which was scheduled for September 9, 2022. You failed to attend that scheduled EUO.

Due to your failure to cooperate with our investigation, not complying with the conditions under the policy, and failure to take all reasonable steps to protect the covered property from further damage, Nationwide will be denying your claim at this time.

## Policy details

Your Farmowner's policy states the following:

FARM PROPERTY COVERAGE FORM FP70010 (ed. 07-12)


EXHIBIT
*A*

BRIAN BARKLEY
Claim # 414747-GL
Page 2 of 3

**A. COVERAGES**

We will pay for direct physical loss of or damage to Covered Property at the "insured location" described in the Declarations, or elsewhere as expressly provided below, caused by or resulting from any COVERED CAUSES OF LOSS.

**J. FARM PROPERTY CONDITIONS**

The following conditions apply in addition to the General Policy Conditions:

    3. Duties in the Event of Loss or Damage

        a. In the event of loss or damage to Covered Property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

            1) Notify the police if a law may have been broken.

            2) Give us prompt notice of the loss or damage. Include a description of the property involved.

            3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

            4) Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss.
If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

            5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

            6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.
Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

            7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request.
We will supply you with the necessary forms.

            8) Cooperate with us in the investigation or settlement of the claim.

        b. We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an "insured's" books and records. At our option and expense, any examination under oath may be video or audio taped as well as being recorded by stenographic record. In the event of an examination, an "insured's" answers must be signed.

    5. Legal Action Against Us

        No one may bring a legal action against us under this Coverage Form unless:

        a. There has been full compliance with all of the terms of this Coverage Form; and

        b. The action is brought within two years after the date on which the direct physical loss or damage occurred.

**K. GENERAL CONDITIONS**

    1. Concealment, Misrepresentation or Fraud

        This insurance is void in any case of fraud by you as it relates to this Coverage Form at any time. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

        a. This Coverage Form;

        b. Your application for this coverage;

**BRIAN BARKLEY**
Claim # 414747-GL
Page 3 of 3

c. The Covered Property;
d. Your interest in the Covered Property; or
e. A claim under this Coverage Form.

## Additional information

We expressly reserve all other rights, defenses, or contentions, which are available to us under the policy of insurance, by law or otherwise, and do not waive any such rights or defenses which we now have or which may become known to us in the future.

If you have information about this claim that may affect our current decision, please forward it to us as soon as possible.

## For more information

If you have any questions or concerns, please contact me at  or .

Sincerely,

Nationwide Agribusiness Ins Naic

cc
Douce Agency, LLC
Angel Fox Esq.

Ohio law requires the following: Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

## CERTIFIED MAIL

Morrow County Courthouse
Kimberly Bood, Clerk of Courts
48 E. High Street, Room 6
Mount Gilead, Ohio 43338

9414 7266 9904 2204 1380 27

2022 CV 00134
0000 2858 0
NATIONWIDE AGRIBUSINESS INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY, S/A
3366 RIVERSIDE DRIVE, SUITE 103
UPPER ARLINGTON, OH   43221

C   FOLD AND TEAR THIS WAY →

Thank you for using Return Receipt Service

RETURN RECEIPT REQUESTED
USPS' MAIL CARRIER
DETACH ALONG PERFORATION

Return Receipt (Form 3811) Barcode

9590 9266 9904 2204 1380 20

1. Article Addressed to:

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY, S/A
3366 RIVERSIDE DRIVE, SUITE 103
UPPER ARLINGTON, OH   43221

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2204 1380 27

PS Form 3811, Facsimile, July 2015

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                          ☐ Agent
                                           ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type:
☒ Certified Mail

Reference Information

2022 CV 00134
0000 2858 0

Thank you for using Return Receipt Service